E-FILED
Thursday, 12 September, 2013  03:03:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

FILED

SEP 11 2013

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 13- 30072 |
| | ) | |
| v. | ) | |
| | ) | 18 U.S.C. § 371 |
| TINA M. KIMBROUGH and | ) | 18 U.S.C. § 1341 |
| GREGORY D. TORAN | ) | 18 U.S.C. § 1035 |
| | ) | |
| Defendants. | ) | |

### INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT 1
### (Conspiracy)

1.     From at least in or about December 2005, through at least June 2011,

in the Central District of Illinois and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, did unlawfully and knowingly combine, conspire,

confederate and agree with each other and with other persons known and

unknown to the grand jury, to commit the following offenses against the United

States:

a.  To devise and participate in a scheme or artifice to defraud, or
to obtain money or property by means of false or fraudulent
pretenses, representations or promises, through the use of the
United States mail in violation of Title 18, United States Code,
Section 1341; and

b.  To knowingly and wilfully execute, or attempt to execute, a
scheme or artifice to defraud a health care benefit program
and to obtain, by means of false and fraudulent pretenses,
representations or promises, property owned by or in the care,
custody or control of a health care benefit program in
connection with the delivery of or payment for health care
benefits, items or services.

2.  As part of the conspiracy, TINA M. KIMBROUGH and GREGORY

D. TORAN, set, implemented and enforced policies and procedures at IBT

Transportation, LLC to defraud Medicaid by submitting claims for services that

were not rendered, claims for services that were not rendered to the extent

claimed, and claims for mileage well in excess of that actually driven.

3.  In furtherance of the conspiracy and to effect its objects,

## TINA M. KIMBROUGH and
## GREGORY D. TORAN,

defendants herein, along with persons known and unknown to the Grand Jury,

committed one or more of the following overt acts:

## OVERT ACTS

4.  On multiple occasions between in or about December 1, 2005, and

June 2011, TINA M. KIMBROUGH and GREGORY D. TORAN directly and

through others, submitted and caused to be submitted claims to the Illinois

2

Department of Health and Family Services (HFS) for transporting children to hospitals after the children had been discharged from the hospital program, and were no longer being transported by IBT Transportation, LLC.

5.      On multiple occasions between in or about December 1, 2005, and June 2011, TINA M. KIMBROUGH and GREGORY D. TORAN reviewed remittance advice forms outlining the claims submitted by IBT Transportation, LLC, the claims paid and the claims rejected by HFS. Despite seeing that claims were paid for services that were not provided, neither took steps to stop billing for the services not being provided and to refund the money paid. Instead, TINA M. KIMBROUGH and GREGORY D. TORAN took steps to attempt to rebill or resubmit the claims that were rejected.

6.      In or about August of 2010, TINA M. KIMBROUGH and GREGORY D. TORAN were made aware that for the year 2010, IBT Transportation, LLC. had been paid for claims submitted for services not rendered of at least $476,172.00. Instead of repaying all that money, however, TINA M. KIMBROUGH and GREGORY D. TORAN notified HFS that they were overpaid only $224,680.73 and kept the remainder of the money. Additionally, TINA M. KIMBROUGH and GREGORY D. TORAN continued to submit claims for services not rendered, and not rendered to the extent billed.

All in violation of Title 18, United States Code, Section 371.

3

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2
### (Mail Fraud)

### BACKGROUND

1.     From on or about June 22, 2006, through November 9, 2007, IBT -

Transportation, Inc., was a corporation registered in the State of Illinois.  It was

involuntarily dissolved on or about November 9, 2007.  IBT - Transportation,

LLC, an Illinois limited liability company, was registered in the State of Illinois

on or about August 11, 2008.  The registration documents represent that the

owners of all membership interests issued for IBT-Transportation, LLC,

(hereafter "IBT Transportation") are Tina M. Kimbrough and Gregory Toran.

2.     The Medicaid program of the United States and the State of Illinois

was established in 1965 to provide medical assistance to indigent persons.  At all

times material herein, the Illinois Department of Health and Family Services

(HFS), which was formerly known as the Illinois Department of Public Aid,

administered the Medicaid program for the State of Illinois.  The United States of

America provided approximately one-half of the money for the Medicaid

program, with the remaining money provided by the State of Illinois.

3.     HFS established procedures in accordance with the regulations of

the United States Department of Health and Human Services (HHS) to

compensate providers of medical services.  One of these services was medical

4

transportation - to transport a patient to or from a recognized medical service. This transportation could be anything from Advanced Life Support services by Emergency Ambulance, used for critically ill patients, to "service car" or private automobile to transport persons for non-emergency services. HFS established guidelines under which it would provide compensation to individuals or companies that transport the qualified patients to and from qualified medical services.

4.     Non-Emergency Transportation services could be provided by individuals or companies registered and accepted as a "Provider" by HFS. To become a Provider in the Medicaid program, the individual or company would submit a "provider enrollment application," and, if accepted, sign an "Agreement for Participation in the Illinois Medical Assistance Program for Transportation Providers."   Tina M. Kimbrough, on behalf of IBT Transportation, submitted both a Provider Application and Provider Agreement on or about December 2, 2005.  Such application was accepted by the Division of Medical Programs for the Illinois Department of Public Aid (predecessor to HFS) and the Agreement was approved on or about December 14, 2005.  In that agreement, Tina M. Kimbrough and Gregory D. Toran agreed to,

a.     ... on a continuing basis, to comply with all current and future program billing and policy provisions as set forth in the applicable Department... rules and handbooks."

5

b.    ... be fully liable for the truth, accuracy and completeness of all claims submitted electronically or on hard copy to the Department for payment.  Provider acknowledges that it understands the laws and handbook provisions regarding transportation services and certifies that the services will be provided in compliance with such laws and handbook provisions.  Provider further acknowledges that compliance with such laws and handbook provisions is a condition of payment for all claims submitted.  Any submittal of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

5.    The "Handbook", referred to in the agreement for Transportation Providers, is the HFS Handbook for Providers of Transportation Services.  This Handbook is made available to every new Provider, as well as publicly published on the HFS website.  Among the provisions in the Handbook, there are rules relevant to each type of transportation, rules regarding the billing for medically necessary services, and rules regarding the billing and reimbursement for mileage.  Among other provisions are:

a.    Section T-204 of the Handbook listed various categories and items for which a Provider would not receive payment, under the heading of "Non-Covered Services." Among those items, for which HFS would not pay, are,

- "No Show" trips (i.e. patient not transported)

- Charges for mileage other than loaded miles (when a patient is actually in the vehicle)

6

b.    The Handbook also required that an individual record of each

transport, commonly referred to as a "trip ticket" be maintained by

the Provider to support any claim submitted for services.  These

records were to include,

- Identification of the participant (name, address and recipient identification number (RIN)).

- Name and address of person requesting the service. Anyone may make this request, including, but limited to, the patient, the transportation provider or the provider of medical care.

- Copy of the Transportation Invoice.

- Identification of the type of vehicle used, (i.e., ambulance, medicar, service car, etc.) and the vehicle's license plate number.

- Name of the driver and attendant, if applicable.

c.    The Handbook further required that the Provider maintain

documentation of the Medical need for the use of an attendant by a

medicar, service car, or a taxicab provider.

d.    The Handbook further required that "Anytime more than one

passenger is transported in the same vehicle for any portion of a trip,

the transportation provider may only charge mileage for the first

passenger.  Allowable ancillaries, such as attendants, if provided,

may be charged for each passenger." It further allowed that a "base

rate" could be charged for each passenger, but that the mileage

7

charge is "limited to the most direct (shortest) route between the
origination address and the destination address for the first
passenger, no matter how far the first passenger travels."

e.    The Handbook further required that "the provider who provided
the services and submitted the claim for payment must review the
Remittance Advice and attest to the accuracy of the information
thereon by signing the Billing Certificaion."

6.    All non-emergency transportation services were required to be
reviewed and approved by HFS prior to the transport. This process, referred to
as "prior approval," was contracted by HFS to First Transit, Inc. ("First Transit").
While it was typically the responsibility of the patient (participant) to obtain
prior approval for non-emergency medical transportation from First Transit, the
medical provider or transportation provider could also request the prior
approval of single trips, such as hospital discharge.

7.    If a Medicaid recipient was required to make multiple trips as part
of a medically necessary course of treatment (such as for renal dialysis,
behavioral health services, chemotherapy, radiation therapy, or physical
therapy), the approval for the multiple trips could be provided in a "standing
order" which would approve necessary trips for a period of time of up to six (6)
months. Prior to approving a "standing order," First Transit would contact the

8

patient's physician or other health professional to validate the medical

appointment(s), medical need, necessity for ongoing visits, already established

appointment dates, and the number and expected duration of the required

ongoing visits.

8.    The primary method for billing Medicaid for services, including

transportation, is to bill the service provided by use of a "code" or number which

described the service provided.  HFS paid the provider a set fee based on that

code, and an additional amount per mile for the minimum distance necessary to

transport the patient.  The codes used were primarily found in the manual

entitled "Handbook for Providers of Transportation Services," published by the

HFS and provided to each transportation provider, including IBT Transportation,

Inc., and publicly published on the HFS website.

## THE SCHEME TO DEFRAUD

9.    From at least on or about December 2005 through June 2011, in the

Central District of Illinois, and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, did knowingly and intentionally devise and intend to devise

a scheme and artifice to defraud the Medicaid program of the State of Illinois and

the United States of America of at least $4 million, by submitting claims for

services not rendered and for services not rendered to the extent claimed.

## BILLING FOR "NO SHOW" TRIPS

10.    It was a part of this scheme to defraud that during the period of time between on or about December 2005 through June of 2011, TINA M. KIMBROUGH and GREGORY D. TORAN directly submitted, and established policies and procedures wherein others submitted, claims to HFS for thousands of transports that did not take place or were approved by HFS, but cancelled prior to the transport.

## MULTIPLE BILLING FOR MILES WHEN
## SEVERAL PERSONS WERE TRANSPORTED TOGETHER

11.    TINA M. KIMBROUGH and GREGORY D. TORAN and others at their direction and under their authority entered into agreements with two behavioral health providers to provide transportation to juvenile participants of the behavioral health counseling programs and services.  As part of these agreements, IBT-Transportation was responsible to pick up the juvenile participants in the program(s) from their residence and transport them to the medical provider for the service.  At the end of the program day, IBT-Transportation was responsible for transporting each of these juvenile participants back to their residences.

12.    At all times material herein, TINA KIMBROUGH and GREGORY TORAN instituted policies and practices at IBT Transportation to directly submit and have others submit claims for payment to HFS charging mileage for almost

10

*every* recipient, even if that recipient was one of several transported simultaneously, resulting in claims to HFS for mileage well in excess of that actually driven.

## BILLING FOR AN ATTENDANT WHEN NO ATTENDANT WAS USED

13.    During the period of time from about December 2005 through June 2011, TINA M. KIMBROUGH and GREGORY D. TORAN directly submitted and established policies and procedures wherein others submitted claims to HFS for attendants, that is a "person other than the driver who is employed by the transportation company," when, in fact, no such attendant was present for the transports.

## SUBMITTING MULTIPLE CLAIMS FOR THE SAME SERVICE

14.    During the period of time from about December 2005 through June 2011, TINA M. KIMBROUGH and GREGORY D. TORAN directly submitted, and established policies and procedures wherein others submitted, multiple claims to HFS for the same purported transportation service.

15.    On or about March 23, 2011, in Springfield, in the Central District of Illinois, and elsewhere,

**TINA M. KIMBROUGH and**
**GREGORY D. TORAN,**

11

defendants herein, for the purpose of executing said scheme did knowingly

cause to be delivered by the United States mail, according to the direction

thereon, an envelope mailed from the State of Illinois, Office of the Comptroller

in Springfield, Illinois, and mailed to IBT Transportation, 4751 S. Central Ave.,

Ste. 1N, Chicago, IL 60638,  which was a "remittance advice" relative to payment

on voucher number 1082K339, listing all payments, and rejections for one or

more services claimed to have been rendered by IBT Transportation between

May 21, 2010, and February 27, 2011, which services were not rendered, or not

rendered to the extent billed;

   All in violation of Title 18, United States Code, Sections 1341 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 3
### (Mail Fraud)

1.     The grand jury realleges and reaffirms the allegations in paragraphs 1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.     On or about August 12, 2009, in Springfield, in the Central District of Illinois, and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, for the purpose of executing said scheme did knowingly cause to be delivered by the United States mail, according to the direction thereon, an envelope mailed from the State of Illinois, Office of the Comptroller, in Springfield, Illinois, and mailed to IBT Transportation, at 8 S. Harvard Avenue, Villa Park, IL 60181, which was a "remittance advice" relative to payment on voucher number 9224K282 listing all payments and rejections for one or more services claimed to have been rendered by IBT Transportation for the period July 22, 2009, through July 28, 2009, , which services were not rendered, or not rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 4
### (Mail Fraud)

1.      The grand jury realleges and reaffirms the allegations in paragraphs 1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.      On or about October 13, 2010, in Springfield, in the Central District of Illinois,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, for the purpose of executing said scheme did knowingly cause to be delivered by the United States mail, according to the direction thereon, an envelope mailed from the State of Illinois, Office of the Comptroller in Springfield, Illinois, and mailed to IBT Transportation, at 4022 East Avenue, Stickney, IL  60402,  which was a "remittance advice" relative to payment on voucher number 0286J725 listing all payments, and rejections for one or more services claimed to have been rendered by IBT Transportation for the period of May 3, 2010, to August 18, 2010, , which services were not rendered, or not rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

14

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 5
### (Mail Fraud)

1.      The grand jury realleges and reaffirms the allegations in paragraphs

1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.      On or about July 8, 2010, in Springfield, in the Central District of

Illinois, and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, for the purpose of executing said scheme did knowingly

cause to be delivered by the United States mail, according to the direction

thereon, an envelope mailed from the State of Illinois, Office of the Comptroller

in Springfield, Illinois, and mailed to IBT Transportation, at 4022 East Avenue,

Stickney, IL  60402,  which was a "remittance advice" relative to payment on

voucher number 0189C988, listing all payments, and rejections for one or more

services claimed to have been rendered by IBT Transportation for the period of

June 2, 2010, through June 4, 2010, , which services were not rendered, or not

rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 6
**(Mail Fraud)**

1.      The grand jury realleges and reaffirms the allegations in paragraphs 1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.      On or about May 19, 2010, in Springfield, in the Central District of Illinois, and elsewhere,

**TINA M. KIMBROUGH and
GREGORY D. TORAN,**

defendants herein, for the purpose of executing said scheme did knowingly cause to be delivered by the United States mail, according to the direction thereon, an envelope mailed from the State of Illinois, Office of the Comptroller in Springfield, Illinois, and mailed to IBT Transportation, at 4022 East Avenue, Stickney, IL  60402,  which was a "remittance advice" relative to payment on voucher number 0139K748, listing all payments, and rejections for one or more services claimed to have been rendered by IBT Transportation for the period of January 1, 2010, through March 26, 2010, , which services were not rendered, or not rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

16

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 7
### (Mail Fraud)

1.      The grand jury realleges and reaffirms the allegations in paragraphs

1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.      On or about June 16, 2010, in Springfield, in the Central District of

Illinois, and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, for the purpose of executing said scheme did knowingly

cause to be delivered by the United States mail, according to the direction

thereon, an envelope mailed from the State of Illinois, Office of the Comptroller

in Springfield, Illinois, and mailed to IBT Transportation, at 8 S. Harvard Ave.,

Villa Park, IL 60181, which was a "remittance advice" relative to payment on

voucher number 0167K653, listing all payments, and rejections for one or more

services claimed to have been rendered by IBT Transportation for the period

between March 22, 2010, through April 23, 2010, which services were not

rendered, or not rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 8
### (Mail Fraud)

1.      The grand jury reallages and reaffirms the allegations in paragraphs 1 through 14 of Count 2 of this indictment as through full set forth herein.

2.      On or about September 30, 2009, in Springfield, in the Central District of Illinois, and elsewhere,

### TINA M. KIMBROUGH and
### GREGORY D. TORAN,

defendants herein, for the purpose of executing said scheme did knowingly cause to be delivered by the United States mail, according to the direction thereon, an envelope mailed from the State of Illinois, Office of the Comptroller in Springfield, Illinois, and mailed to IBT Transportation, at 4022 East Avenue, Stickney, IL  60402,  which was a "remittance advice" relative to payment on voucher number 9273K062, listing all payments, and rejections for one or more services claimed to have been rendered by IBT Transportation for the period between May 11, 2009, through September 3, 2009, , which services were not rendered, or not rendered to the extent billed;

All in violation of Title 18, United States Code, Sections 1341 and 2.

18

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 9
### (False Statement)

1.     The grand jury realleges and reaffirms the allegations in paragraphs 1 through 14 of Count 2 of this indictment as through fully set forth herein.

2.     On or about March 11, 2010 in the Central District of Illinois, and elsewhere,

### TINA M. KIMBROUGH

defendant herein, knowingly and willfully made a materially false and fraudulent statement and representation, specifically that "IBT Transportation is currently generating 100% revenue through the Department of Healthcare and Family Services Transportation Department" in a request to continue receiving expedited payments from the Medicaid program, which is a health care benefit program as defined in 18 U.S.C. §24(b), such statement being in connection with the delivery of or payment for health care benefits, items or services,

In violation of Title 18, United States Code, Section 1035.

## FORFEITURE ALLEGATIONS

1.     The allegations contained in Counts 2 through 9 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2.     Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1341 and 1035 set forth in Counts 2 through 9 of this Indictment, the defendants,

### GREGORY D. TORAN and
### TINA M. KIMBROUGH,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses. The property to be forfeited includes, but is not limited to, the following:

(a)     Chase Bank Checking Account No. XXXXXXXXXXXX103 in the name of IBT Transportation;

(b)     Chase Bank Checking Account No. XXXXXXXXXXXX228 in the name of IBT Food Enterprises;

(c)     Chase Bank Savings Account No. XXXXXXXXXXXXX637 in the name of IBT Food Enterprises;

(d)     Chase Bank Checking Account No. XXXXXXXXXXXX767 in the
name of MG Records;

(e)     ChaseBank Savings Account No.  XXXXXXXXXXXX180 in the name
of MG Records;

(f)     Chase Bank Checking Account No. XXXXXXXXXXXX945 in the
name of Tina Kimbrough;

(g)     Chase Bank Savings Account No.      XXXXXXXXXXXX157 in the
name of Tina Kimbrough;

(h)     Chase Bank Checking Account No. XXXXXXXXXXXX060 in the
name of Gregory Toran;

(i)     Chase Bank Checking Account No. XXXXXXXXXXXX756 in the
name of Gregory Toran;

(j)     Chase Bank Savings Account No. XXXXXXXXXXXX016 in the name
of Gregory Toran;

(k)     Chase Bank Savings Account No. XXXXXXXXXXXX764 in the name
of Gregory Toran;

(l)     One parcel of real estate, together with all buildings, appurtenances,
improvements, fixtures, attachments and easements thereon, and all rights
appertaining thereto, located at 9544 South Vanderpoel Avenue, Chicago,
Illinois, and legally described as:

Lot Four (4) in Lutgert's Resubdivision of Lot Fourteen (14) and the East 35 feet of Lot Fifteen (15) in Howe's Subdivision at Longwood, a subdivision of Lots 110 to 113, both inclusive, in Block Six (6), in Hilliard and Dobbin's First Addition to Washington Heights, being a subdivision of the East One-Half (½) of the Northeast Quarter (¼) of Section Seven (7) and the Northwest Quarter (¼) of Section Eight (8), Township Thirty-seven (37) North, Range Fourteen (14), East of the Third Principal Meridian in the County of Cook and State of Illinois; (PIN 25-07-204-010-0000);

(m)    One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 1450 West 112th Place, Chicago, Illinois, and

legally described as:

Lots Nine (9) and Ten (10) in Block 59 in Washington Heights, being a Re-Subdivision of Lots One (1) and Two (2) in Block 913, all of Block Fourteen (14), Lots Seven (7) to Sixty-three (63) inclusive in Block Twenty (20); Lots One (1), Two (2) and Three (3) in Block Twenty-one (21), and all of Blocks Twenty-four (24), Twenty-five (25), Twenty-eight (28) and Twenty-nine (29) all in Section Eighteen (18) and Nineteen (19), also a Subdivision of the West One-Half (½) of the Northwest Quarter (¼) of Section Twenty (20), and that portion of the East One-Half (½) of the Southwest Quarter (¼) of Section Nineteen (19), East of Prospect Avenue, all in Township Thirty-seven (37) North, Range Fourteen (14) East of the Third Principal Meridian in the County of Cook and State of Illinois; (PIN 25-20-108-019-0000);

(n)    One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 28 Carrington Court, Hazel Crest, Illinois, and

legally described as:

Lot Seventy-six (76) in the Resubdivision of Part of Dynasty Lake
Estate Unit V, Phase 1, being a subdivision of part of the Northwest
Quarter (¼) of Section Two (2), Township Thirty-five (35) North,
Range Thirteen (13), East of the Third Principal Meridian, in the
County of Cook and State of Illinois; (PIN 31-02-110-054-0000);

(o)     One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 5751 to 5759 South Halsted, Chicago, Illinois, and

legally described as:

Parcel 1: The South One-Half (½) of Lot Six (6) and all of Lots
Seven (7), Eight (8) and Nine (9) in Block One (1) in subdivision of
South One-Half (½) of the Northwest Quarter (¼) of Lot Thirty-nine
(39) in School Trustees' Subdivision of Section Sixteen (16),
Township Thirty-eight (38) North, Range Fourteen (14) East of the
Third Principal Meridian in the County of Cook and State of Illinois;

Parcel 2: Lots Ten (10), Eleven (11) and Twelve (12) in Block One (1)
of the subdivision of the South One-Half (½) of the Northwest Quarter (¼)
of Lot Thirty-nine (39) in School Trustees' Subdivision of Section Sixteen
(16), Township Thirty-eight (38) North, Range Fourteen (14) East of the
Third Principal Meridian in the County of Cook and State of Illinois; (PIN
20-16-112-014-0000, 20-16-112-015-0000, 20-16-112-016-0000, and 20-16-112-
017-0000);

(p)     One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 5741 South Halsted, Chicago, Illinois, and legally

described as:

Lot Five (5) and the North One-Half (½) of Lot Six (6) in Block One
(1) in the subdivision of the South One-Half (½) of the Northwest

Quarter (¼) of Lot Thirty-nine (39) in School Trustee's Subdivision
of Section Sixteen (16), Township Thirty-eight (38) North, Range
Fourteen (14) East of the Third Principal Meridian in the County of
Cook and State of Illinois; (PIN 20-16-112-013-0000);

(q)     One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 6978 West North Avenue, Chicago, Illinois, and

legally described as:

Lots Twenty-nine (29) and Thirty (30) in Block Thirteen (13) in
White's Second Rutherford Park Addition to Chicago, a subdivision
of the Southwest Quarter (¼) (except the West 22.28 chains thereof)
of Section Thirty-one (31), Township Forty (40) North, Range
Thirteen (13), East of the Third Principal Meridian, in the County of
Cook and State of Illinois; (PIN 13-31-324-029-0000 and 13-31-324-
030-0000);

(r)     One parcel of real estate, together with all buildings, appurtenances,

improvements, fixtures, attachments and easements thereon, and all rights

appertaining thereto, located at 1029 Des Plaines Avenue, Unit 503, Forest Park,

Illinois, and legally described as:

Unit Number "D" 503 in Terrace Condominium as delineated on a
survey of the following described real estate.

Part of Lots "A" and "B" in the subdivision of Lot 1 in Haase's
Addition to Harlem in the South One-Half (½) of the Southwest
One-Quarter (¼) of Section Thirteen (13), Township Thirty-nine (39)
North, Range Twelve (12), East of the Third Principal Meridian, and
of Lot 2 in said Haase's Addition to Harlem of the Southwest
Quarter (¼) of said Section Thirteen (13), East of the Third Principal
Meridian which survey is attached as Exhibit "A" to the Declaration

of Condominium recorded as Document 26146887, together with its
undivided percentage interest in the common elements, in Cook
County, Illinois; (PIN 15-13-300-026-1083);

3.    The United States seeks a personal money judgment against the

defendants, jointly and severally, in the amount of at least $4,000,000.00, which

represents the amount of the net proceeds obtained as a result of the offenses

described in Counts 1 through 9 of this Indictment.

4.    If any of the property described above, as a result of any act or

omission of the defendant[s]:

> a.    cannot be located upon the exercise of due diligence;
>
> b.    has been transferred or sold to, or deposited with, a third
>         party;
>
> c.    has been placed beyond the jurisdiction of the court;
>
> d.    has been substantially diminished in value; or
>
> e.    has been commingled with other property which cannot be
>         divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c).

A True Bill
s/ Foreperson

Foreperson

s/ Eric Long

for: JAMES A. LEWIS
UNITED STATES ATTORNEY

PDH

26